UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
ROBERT RODRIGUEZ, individually and on
behalf of all others similarly situated,

       Plaintiff,

   -against-

THE CHEESECAKE FACTORY INCORPORATED,

       Defendant.
-------------------------------------------------------------------X

For Online Publication Only

**MEMORANDUM &
ORDER**
16-CV-2006 (JMA)(AKT)

FILED
CLERK

8/11/2017 2:28 pm

U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE

APPEARANCES:

Richard M. Hendler
Law Offices of Richard M. Hendler
10-14 Bond Street, Suite Box 218
Great Neck, NY 11021
   *Attorney for Plaintiff*

Brian Thomas Carney
Akin, Gump, Strauss, Hauer & Feld, L.L.P.
1 Bryant Park
New York, NY 10036
   *Attorney for Defendant*

Andrew Jick
Neal R. Marder
Akin, Gump, Strauss, Hauer & Feld, L.L.P.
1999 Avenue of the Stars, Suite 600
Los Angeles, CA 90067
   *Attorneys for Defendant*

**AZRACK, United States District Judge:**

Before the Court is defendant's motion to dismiss the amended complaint pursuant to

Federal Rule of Civil Procedure 12(b)(6).  For the following reasons, that motion is granted.

## I.  BACKGROUND

This case arises out of a common feature of communal dining—requesting separate checks.

Plaintiff Robert Rodriguez alleges that he dined with a companion at the Grand Lux Café in Garden City, New York on February 23, 2016.  (Am. Compl. Ex. A, ECF No. 29-1.)  At some point, Rodriguez and his companion requested separate checks.  In response, the restaurant provided Rodriguez with two checks.  (Id.; Oral Arg. Tr. ("Tr.") 7:13–18, 13:20–14:14; 16:11–13, 19:14–24.)  The first check listed the total amount due on the bill—$82.77.  (Am. Compl. Ex. A.)  Below the total, this check read:

Gratuity Not Included
Suggested Gratuity
20% 16.55
18% 14.90
15% 12.42

(Id.)  The second check listed the amount Rodriguez owed individually, or the amount due after the total bill had been divided in half—$41.39.  (Id.)  This second check contained the same message:

Gratuity Not Included
Suggested Gratuity
20% 16.55
18% 14.90
15% 12.42

(Id.)  Rodriguez tipped $16.55, which amounted to 20% of the total bill or 40% of his share.

Rodriguez alleges that he had a similar experience at The Cheesecake Factory in Westbury, New York when he dined there with two companions on March 18, 2016.  (Id.)  Again, at some point during the meal, the diners requested separate checks.  In response, the restaurant provided Rodriguez with two bills—the total bill ($147.24) and a bill listing what he owed individually ($49.08).  (Id.)  Again, the exact same message was printed on the bottom of both checks:

Suggested Gratuity
20% 29.45
18% 26.50
15% 22.09

2

(Id.)  Rodriguez tipped $29.45, which amounted to 20% of the total bill or 60% of his share.  (Id.)

Rodriguez contends that, in addition to these two occasions, he "regularly purchased and consumed food and beverages and subsequently requested separate checks" at the Grand Lux Café in Garden City and at The Cheesecake Factory in Westbury.  (Am. Compl. ¶ 13.)  Rodriguez further alleges that each time he visited these locations and requested separate checks he paid the gratuity listed on his individual check, which was actually a percentage of the total bill, rather than a percentage of his share.  (Id.)  Rodriguez claims he tipped this way because he "believed the calculations listed . . . were accurate and proportional to his share of the bill," and further that he, "would not have paid in excess but for [the] misleading calculations."  (Id.)

On April 24, 2016, Rodriguez filed suit against defendant The Cheesecake Factory, Incorporated ("TCF"), which owns and operates both restaurants.[1]  (Compl., ECF No. 1.)  In an amended complaint, Rodriguez alleges that TCF's practice is deceptive because it leads customers to believe that the amount listed as a suggested gratuity on the bottom of a split bill is a percentage of their individual share of the bill, when the amount calculated is actually a percentage of the total bill.  TCF moved to dismiss the amended complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.  The Honorable Joseph F. Bianco heard oral argument on December 5, 2016, after the motion was fully briefed.  (ECF No. 32.)  Judge Bianco subsequently recused himself, and this case was transferred to the undersigned.

## II. DISCUSSION

Plaintiff alleges three causes of action arising out of TCF's suggested gratuity practice: (1) a claim under New York General Business Law ("GBL") § 349; (2) a common law fraud claim; and (3) an unjust enrichment claim.  The Court addresses each in turn.

---

[1] Although this case was filed as a putative class action, plaintiff has not yet moved for class certification.

## A.  Standard for Motion to Dismiss

To survive a motion to dismiss pursuant to Rule 12(b)(6), a plaintiff must allege sufficient facts "to state a claim to relief that is plausible on its face."  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007).  A claim is facially plausible only "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Twombly, 550 U.S. at 556).  Mere labels and legal conclusions will not suffice.  Twombly, 550 U.S. at 555.  In reviewing a motion to dismiss, the Court must accept the factual allegations set forth in the complaint as true and draw all reasonable inferences in favor of the plaintiff.  Cleveland v. Caplaw Enters., 448 F.3d 518, 521 (2d Cir. 2006).  When deciding a motion to dismiss, a court may consider materials attached to the complaint, materials integral to the complaint, and materials incorporated into the complaint by reference.  Sira v. Morton, 380 F.3d 57, 67 (2d Cir. 2004).

## B.  GBL § 349 Claim

Defendant argues that plaintiff fails to state a § 349 claim because the suggested gratuity practice is not materially misleading.  The Court agrees.[2]

### 1.  Standard for GBL § 349 Claims

Section 349 of New York's General Business Law prohibits "deceptive acts and practices in the conduct of any business . . . ."  GBL § 349.  To state a violation of § 349, a plaintiff must allege three elements: "first, that the challenged act or practice was consumer-oriented; second, that it was misleading in a material way; and third, that the plaintiff suffered injury as a result of the deceptive act."  Stutman v. Chem. Bank, 95 N.Y.2d 24, 29 (2000) (collecting cases).  A plaintiff

---

[2] Additionally, defendant argues that the amended complaint should be dismissed both because plaintiff has not stated an injury independent of the alleged deceptive practice and because gratuities are optional payments.  Because plaintiff has not plausibly alleged a materially misleading practice, it is unnecessary to address these remaining arguments.

seeking to show a § 349 violation need not allege a defendant's intent to defraud or a plaintiff's reliance on a misrepresentation or omission.  Id.  Furthermore, a plaintiff pleading a § 349 violation need not satisfy the heightened pleading requirements of Rule 9(b) of the Federal Rules, but instead need only meet the standard articulated in Rule 8.  Pelman ex rel. Pelman v. McDonald's Corp., 396 F.3d 508, 511–12 (2d Cir. 2005).

The parties do not dispute that the alleged practice is consumer-oriented.  The plausibility of plaintiff's allegations thus turns on (1) whether the practice is materially misleading and (2) whether plaintiff has sufficiently stated an injury that resulted from the allegedly deceptive practice.[3]

### 2.  Materially Misleading Practice

Essentially, plaintiff argues that the alleged practice is materially misleading because it leads customers to believe that the amount listed as a suggested gratuity on the bottom of a split bill is a percentage of their individual share of the bill, when the amount calculated is actually a percentage of the total bill.

A practice is materially misleading under § 349 when it is "likely to mislead a reasonable consumer acting reasonably under the circumstances."  Beth Israel Med. Ctr. v. Verizon Business Network, No. 11-CV-4509, 2013 WL 1385210, at *7 (S.D.N.Y. Mar. 18, 2013) (quoting Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, 85 N.Y.2d 20, 26 (1995)).  Courts generally consider a practice not to be misleading within the meaning of § 349 when a plaintiff is provided with all the information necessary to understand the practice and its consequences—a concept sometimes referred to as "full disclosure."  See id. ("Ordinarily, when the alleged deceptive act or practice is fully disclosed to a plaintiff, the 'deception' cannot amount to a

---

[3] Again, because the Court's determination that the practice is not materially misleading is dispositive of plaintiff's § 349 claim, the Court does not address whether plaintiff has sufficiently stated an injury.

materially misleading act or practice under Section 349."); see, e.g., Zuckerman v. BMG Direct Marketing, Inc., 737 N.Y.S.2d 14, 15 (App. Div. 1st Dep't 2002) (dismissing § 349 claim alleging shipping and handling fees were materially misleading because amount of fees was fully disclosed in defendant's promotional materials); Sands v. Ticketmaster-New York, Inc., 616 N.Y.S. 2d 362, 363 (App. Div. 1st Dep't 1994) (dismissing § 349 claim alleging Ticketmaster's fees were materially misleading because fees were fully disclosed to user prior to sale); Dimond v. Darden Restaurants, Inc., No. 13-CV-5244, 2014 WL 3377105, at *8 (S.D.N.Y. July 9, 2014) (dismissing § 349 claim alleging restaurants' automatic addition of gratuity to bill was materially misleading because the terms of the practice were "completely and conspicuously indicated on the menu").[4] This is the case even if the practice and its consequences are not immediately obvious to a consumer. See Beth Israel Med. Ctr., 2013 WL 1385210 at *7–8 (rejecting the argument that "a complete, if arguably confusing, disclosure may be considered misleading" and dismissing § 349 claim alleging that defendant's overbilling was materially misleading, inter alia, because plaintiff was provided with invoices listing the excessive charges).

Moreover, at least one court in this district has determined that the reasonable consumer contemplated by GBL § 349 possesses a basic understanding of mathematics. In Hayrioglu v. Granite Capital Funding, LLC, the plaintiff alleged that the lender who issued him a "no-doc [home] loan" violated § 349. 794 F. Supp. 2d 405 (E.D.N.Y. 2011). The plaintiff asserted that the defendant misstated the plaintiff's monthly income on his loan application and failed to require documentation to prove his monthly income, but, nonetheless, made the loan to the plaintiff. Id. at 411. According to the plaintiff, this conduct caused him to believe that he could satisfy the loan

---

[4] Although there may be a distinction between a practice whose terms are explicitly stated in information provided to the consumer and a practice which requires an inferential step by a consumer to discover its terms (i.e., a consumer needs to multiply a total amount owed by a desired percentage to calculate a tip), plaintiff does not attempt to distinguish the relevant case law on these grounds.

obligations when the defendant knew he could not. Id.

The Hayrioglu Court found, inter alia, that the defendant's conduct was not materially misleading.[5]  According to the court, no reasonable consumer would have been misled by the defendant's conduct because, under the circumstances alleged, the plaintiff knew or should have known that his monthly income was substantially less than the monthly payments required by the loan. Id. The court reasoned:

> [I]t is the Court's view that a reasonable consumer purchasing a home valued at more than half a million dollars would do the few easy mathematical calculations required to determine his repayment obligations under what was a relatively simple loan.  Thus, if the plaintiff did not have an attorney present and did not have time or the ability to read the documents he signed, it was still not reasonable for the plaintiff to fail to determine his repayment obligation under the loan.

Id. at 412.

Here, the Court concludes that plaintiff has not plausibly alleged that TCF's conduct was materially misleading.  On each occasion described in the amended complaint, plaintiff received two bills, one listing the total amount of the bill and the other listing his individual portion of that bill.  Each bill then listed identical suggested gratuity amounts (of 20%, 18%, and 15%) without specifying the total amount upon which these gratuity calculations were based.  A reasonable consumer in possession of the above information would not be misled into believing that the suggested gratuity amounts listed on the split bills were calculated as a percentage of plaintiff's individual share.  Instead, a reasonable consumer would conclude that the suggested gratuity amounts were based on the total bills.  A quick glance at the total bills, as compared to the bills listing his individual share, would lead to this conclusion.  Both the total bills and plaintiff's

---

[5] The district court also determined that the defendant's conduct was not consumer-oriented, a factor not at issue in this case.

individual bills listed the exact same suggested gratuities.  Even an individual who lacks the capacity to perform multiplication could compare the checks and conclude that 20% of a smaller number cannot possibly equal 20% of a larger number.  Only the most rudimentary math skills would be necessary to reach this conclusion—it is simply not plausible that reasonable consumers lack these skills.

Plaintiff argues that: (1) it is premature for the Court to engage in fact-finding about what a reasonable customer would think under the circumstances alleged; (2) once a split bill has been requested, the total bill serves no purpose in a consumer's final calculation; (3) an analysis of whether a business practice is false or misleading requires "an assessment of context and purpose, as well as utility to the customer;" (4) whether a particular practice is misleading is a factual issue; and (5) plaintiff is "prepared to present expert testimony regarding American tipping culture, the math literacy of the average American, and whether a diner feels 'coerced' to tip under the normal circumstances."  (Pl.'s Mem. at 3–4, ECF No. 28.)  The Court has considered these arguments; none convince the Court that defendant's motion should be denied.

Plaintiff also argues that additional discovery is required before the Court can rule on defendant's motion to dismiss.  In particular, plaintiff seeks discovery to determine if TCF regularly provides customers who request separate checks with copies of their total bills.  Plaintiff also requests discovery to determine what a reasonable diner would do if he did not receive a copy of the total bill.

Plaintiff's request for discovery is improper at this time for a number of reasons.  First, the Court notes that plaintiff did not need discovery from TCF to include allegations on these issues in the amended complaint.  Second, plaintiff has already admitted that he received copies of both

the total bills and his individual bills during the events in question.[6]  What TCF habitually does with other customers does not alter this fact and, therefore, is of no consequence to the question of whether plaintiff's claim should be dismissed.  Third, courts regularly determine, as a matter of law, that a defendant's conduct would not have misled a reasonable consumer.  This determination may happen at the motion to dismiss stage, before any discovery is conducted.  See, e.g., Hayrioglu, 794 F. Supp. 2d 405; Dimond, 2014 WL 3377105; Beth Israel Med. Ctr., 2013 WL 1385210; Stutman, 95 N.Y.2d 24; Zuckerman, 737 N.Y.S.2d 14; Sands, 616 N.Y.S. 2d 362.  And fourth, under Iqbal, a plaintiff is not entitled to any discovery unless he can first state a plausible claim.  As discussed above, plaintiff's claim is not plausible as alleged.

Given Iqbal's plausibility standard, the objective nature of the reasonable customer inquiry, and the undisputed fact that plaintiff received both the total bills and the split bills, the Court concludes that plaintiff has failed to plausibly allege that defendant's gratuity practice was materially misleading.  Accordingly, the Court grants defendant's motion and dismisses plaintiff's § 349 claim.

## C. **Common Law Fraud Claim**

Next, defendant moves to dismiss plaintiff's common law fraud claim arguing, (1) a reasonable consumer would not rely on the suggested gratuities when deciding what amount of tip to leave and (2) plaintiff does not allege any facts giving rise to the inference that TCF acted with fraudulent intent.  The Court agrees and concludes that plaintiff has not alleged a plausible fraud claim.[7]

---

[6] Plaintiff attached copies of the bills listing the total amount due on the meals to his amended complaint and conceded he received them at the time of the events giving rise to the amended complaint at oral argument.

[7] Additionally, defendant contends that plaintiff has failed to allege a misrepresentation and has failed to satisfy the heightened pleading requirement of Rule 9.  Because the Court determines that plaintiff has not plausibly alleged justifiable reliance or fraudulent intent, it is unnecessary to address these additional grounds.

### 1. Standard for Common Law Fraud

To state a claim for intentional fraud under New York common law, a plaintiff must allege: "(1) a misrepresentation or a material omission of fact which was false and known to be false by defendant, (2) made for the purpose of inducing the other party to rely upon it, (3) justifiable reliance of the other party on the misrepresentation or material omission, and (4) injury." Premium Mortg. Corp. v. Equifax, Inc., 583 F.3d 103, 108 (2d Cir. 2009) (quoting Lama Holding Co. v. Smith Barney Inc., 88 N.Y.2d 413, 421 (1996)).

### 2. Justifiable Reliance

Defendant contends that plaintiff fails to plead justifiable reliance because no reasonable consumer would have believed that the suggested gratuities were percentages of plaintiff's portion of each meal, rather than the total bill.

In addressing plaintiff's GBL § 349 claim, the Court previously explained why a reasonable consumer would not be misled by the alleged practice. For the same reasons, plaintiff's fraud claim fails. See Vasquez v. Soto, 877 N.Y.S.2d 467, 468 (App. Div. 2d Dep't 2009) ("Where, as in this case, the true information is provided in the title report provided to the plaintiffs' attorney prior to closing, any reliance by the plaintiffs on the misrepresentation is not reasonable or justifiable."); Hayrioglu, 794 F. Supp. 2d at 414 (dismissing common law fraud claim for failure to plead justifiable reliance when, inter alia, "a few relatively simple mathematical calculations would have revealed to the plaintiff that, even under the reasonable terms presented by [defendant], his payment obligation on the loan he was seeking was going to exceed his monthly income").

### 3. Defendant's Fraudulent Intent

In order to plausibly plead fraudulent intent, a plaintiff must plead "facts that give rise to a

strong inference of fraudulent intent." <u>Nakahata v. New York-Presbyterian Healthcare Sys. Inc.,</u> 723 F.3d 192, 198 (2d Cir. 2013). To satisfy this relatively strict standard, a plaintiff must allege "that defendants had either 'motive and opportunity to commit fraud,' or allegations of 'strong circumstantial evidence of conscious misbehavior or recklessness.'" <u>Prickett v. N.Y. Life Ins. Co.,</u> 896 F. Supp. 2d 236, 246 (S.D.N.Y. 2012) (quoting <u>Landesbank Baden-Wurttemberg v. Goldman, Sachs & Co.,</u> 478 F. App'x 679, 681–82 (2d Cir. 2012)). Allegations of a general profit motive are insufficient. <u>Landesbank Baden-Wurttemberg,</u> 478 F. App'x at 681–82 (citing <u>Novak v. Kasaks,</u> 216 F.3d 300, 307 (2d Cir. 2000)); <u>see also Prickett,</u> 896 F. Supp. 2d at 247 ("[T]he profit motive common to all businesses is insufficient to establish scienter.").

Here, plaintiff pleads, in conclusory fashion, that "Defendant made the misrepresentations herein alleged with the intention of depriving Plaintiff . . . of property or otherwise causing injury, and thus, Defendant has committed fraud." (Am. Compl. ¶ 44.) However, there are no accompanying factual allegations in the complaint to support any inference of scienter. Defendant's general profit motive is legally insufficient to show fraudulent intent. Moreover, defendant's allegedly fraudulent practice appears to only directly benefit servers, rather than defendant itself. This point further illustrates why plaintiff's conclusory allegation of fraudulent intent is implausible.

For these reasons, the Court grants defendant's motion and dismisses plaintiff's common law fraud claim.

## D.  Unjust Enrichment Claim

Defendant argues that plaintiff fails to state a claim for unjust enrichment because (1) this claim is duplicative of his tort claims and (2) he fails to plead any facts that, in equity and good conscience, would require restitution. Plaintiff counters that his unjust enrichment claim cannot

be duplicative of his other claims because he has not pled a contract claim.  Plaintiff also argues that, even if the suggested gratuity practice does not constitute a GBL violation or common law fraud, it would still be against equity and good conscience to permit TCF to retain any excess tip payments.  The Court agrees with defendant.

"The basis of a claim for unjust enrichment is that the defendant has obtained a benefit which in 'equity and good conscience' should be paid to the plaintiff."  Corsello v. Verizon N.Y. Inc., 18 N.Y.3d 777, 790 (2012) (collecting cases).  "To state a claim for unjust enrichment, a plaintiff must plead that (1) the defendant was enriched (2) at the plaintiff's expense and (3) under circumstances of such enrichment equity and good conscience require the defendant to make restitution."  Goldemberg v. Johnson & Johnson Consumer Co., 8 F. Supp. 3d 467, 483 (S.D.N.Y. 2014) (citing Hughes v. Ester C. Co., 930 F. Supp. 2d 439, 471 (E.D.N.Y. 2013) and Corsello, 18 N.Y.3d at 790).  But, as the New York Court of Appeals has warned, "unjust enrichment is not a catchall cause of action to be used when others fail."  Corsello, 18 N.Y.3d at 770.  "An unjust enrichment claim is not available where it simply duplicates, or replaces, a conventional contract or tort claim."  Id.; see also Goldemberg, 8 F. Supp. 3d at 484 ("Certainly, if in New York courts the instant claim for unjust enrichment would be unavailable—as here, where Plaintiff simply restates elements of other claims—it must equally be unavailable in the Federal courts.").

Moreover, "[a] claim for unjust enrichment does not lie to relieve a party 'of the consequences of [the party's] own failure to . . . exercise reasonable caution with respect to a business transaction.'"  Dragon Inv. Co. II LLC v. Shanahan, 854 N.Y.S.2d 115, 118 (App. Div. 1st Dep't 2008).

Here, plaintiff claims that defendant's practice misleads customers and results in higher tips than customers intend to leave.  Plaintiff's unjust enrichment claim simply restates the

allegations underpinning his tort claims.  But recharacterizing his allegations as unjust enrichment cannot cure the deficiencies identified earlier.  Corsello, 18 N.Y.3d at 791 ("To the extent that these claims succeed, the unjust enrichment claim is duplicative; if plaintiffs' other claims are defective, an unjust enrichment claim cannot remedy the defects.")

Plaintiff's argument that his unjust enrichment claim is not duplicative of his other causes of action is unavailing.  Plaintiff argues that an unjust enrichment claim can only be dismissed as duplicative when a contract claim has also been pled.  In support, plaintiff relies on Sebastian Holdings, Inc. v. Deutsche Bank AG, 78 A.D.3d 446 (App. Div. 1st Dep't 2010), a case which involved a breach of contract claim.  Plaintiff, however, reads the case law too narrowly and ignores part of the standard articulated by the New York Court of Appeals in Corsello.  Corsello not only permits, but requires dismissal of unjust enrichment claims that duplicate not only contract, but also tort claims.  18 N.Y.3d at 790–91 ("An unjust enrichment claim is not available where it simply duplicates, or replaces, a conventional contract or tort claim").

Moreover, it would not be against equity and good conscience to allow defendant and its employees to retain any excess tips.  As discussed above, plaintiff had access to all the relevant information when he determined the amount of tip to leave at the end of his meal.  As in Dragon Inv. Co. II, the Court declines to relieve plaintiff of the consequences of his own failure to exercise reasonable caution with respect to a business transaction.  854 N.Y.S.2d at 118.

**E.  Leave to Amend**

"The court should freely give leave [to amend] when justice so requires."  Fed. R. Civ. P. 15(a)(2).  Nevertheless, "it is within the sound discretion of the court whether to grant leave to amend."  John Hancock Mut. Life. Ins. Co. v. Amerford Int'l Corp., 22 F.3d 458, 462 (2d Cir. 1994).

At the outset, the Court notes that plaintiff, who is represented, already had the opportunity to amend the complaint once before, which weighs against granting additional leave.

Plaintiff argues that he should be granted leave to amend the amended complaint if the Court grants defendant's motion to dismiss. (Pl.'s Mem. at 1.) Plaintiff, however, fails to propose any specific changes he would make should leave to amend be granted. (Id. at 1, n.1.) At oral argument before Judge Bianco, plaintiff's counsel elaborated on how plaintiff would amend the amended complaint if given the opportunity to do so. Counsel stated: "[W]e would be asking to amend for the possibility of bringing in an individual who may or may not have been at the restaurant at the same time, who dined at the same time he did and was a party to that split bill." (Tr. 15:22–16:1.) When probed, counsel continued:

> [We would] add a plaintiff who also—who was also at that table so that that person will have the opportunity to—so we can at least amend pleadings so that person will have the opportunity to testify as to what it is that they received at the time. Our client may have alleged that he received both bills. It's not dispositive that everyone at that table also received both bills.

(Id. at 16:7–13.)

Notably, after oral argument and during the time that this motion was pending before the undersigned, plaintiff never submitted anything alleging that plaintiff's fellow diner did, in fact, fail to receive both bills, as plaintiff's counsel speculated at oral argument. Because plaintiff's counsel never followed up on this issue and has never submitted a proposed amended complaint addressing this issue, the Court denies plaintiff leave to amend.

## III.  CONCLUSION

For the reasons stated above, the Court grants defendant's motion to dismiss the amended complaint in its entirety. Furthermore, the Court declines to grant plaintiff leave to amend the amended complaint. The Clerk of the Court is directed to close this case.

14

**SO ORDERED.**

                                                 \_\_/s/ JMA_____

Dated:   August 11, 2017                          Joan M. Azrack
        Central Islip, New York                United States District Judge